**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DELVY DISLA,<br>RONNELL DUSAUZAY,<br>JUSTIN CAPOTE, and<br>JERMAINE DICKERSON,<br><br>          Plaintiffs,<br><br>   v.<br><br>CITY OF NEW YORK,<br><br>          Defendant. | Case No. _____<br><br>(Jury Trial Demanded) |

## COMPLAINT

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, and on behalf of themselves and all other similarly situated employees currently or formerly employed by Defendant, for their Complaint against the City of New York state as follows:

### INTRODUCTION

1.    Plaintiffs are current and former employees of the Defendant, City of New York, who work or have worked in the position of Special Officer in the Department of Citywide Administrative Services ("DCAS"). Plaintiffs bring this action against Defendant as a collective action for back pay, liquidated damages, attorneys' fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA), and 28 U.S.C. § 1331, to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2.    Plaintiffs are similarly situated to each other and to other Special Officers because they have been subject to the same policies and/or practices that violate the FLSA whereby the

Defendant suffered or permitted them to perform uncompensated overtime work before and after their paid shifts, and during their one-hour unpaid meal periods. Plaintiffs are also similarly situated to each other and to other Special Officers because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant fails to properly calculate the regular rate of pay upon which their overtime rate is calculated and paid.

## PARTIES

3.     Plaintiffs, all of whom are listed in Exhibit A, have each given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

4.     While employed by Defendant, each of the Plaintiffs in this action, as well as those similarly situated, has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5.     Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency and "employer" within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTS**

8.      Plaintiffs are, and have been at all times material, employed by Defendant within the last three years and continuing to date, in the position of Special Officer at DCAS, whose principal job duty, like the primary job duty of all others similarly situated, is to ensure that New York City and State buildings, facilities, and the surrounding areas, are safe for public employees and members of the public.

9.      The regular job duties of Plaintiffs and all others similarly situated include but are not limited to: patrolling City and State buildings, facilities, and the surrounding areas; responding to incidents on public property; de-escalating conflicts; performing security screenings of visitors to governmental buildings; operating security equipment, including but not limited to metal detectors and x-ray machines; providing routine information to visitors and employees; serving administrative notices on public employees and retrieving property from public employees; maintaining crowd control on governmental property; and writing incident reports.

10.     All Plaintiffs perform the job duties described in Paragraph 9 for governmental buildings, facilities and surrounding areas located within the five boroughs in New York City that are leased and/or operated by DCAS.

11.     While working as Special Officers, Plaintiffs and all others similarly situated are regularly scheduled to work a minimum of 40 hours a week. Specifically, each week, Plaintiffs are regularly scheduled to either work five nine-hour shifts (for example, from 7:30 a.m. to 4:30 p.m. ("day shift") with a one-hour uncompensated meal period), or five eight-hour shifts (for example, from approximately 4:00 p.m. to 12:00 a.m. or approximately 12:00 p.m. to 8:00 a.m. ("night shift") without a meal period). However, Plaintiffs routinely work hours in addition to their regularly scheduled 40 hour shifts such that they routinely work overtime over 40 hours in a

workweek. On such occasions, Defendant fails to compensate Plaintiffs and all others similarly situated for all hours worked in excess of 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, Defendant fails to compensate Plaintiffs and all others similarly situated for hours worked before the start of their scheduled shifts, after the end of their scheduled shifts, and work performed during their one-hour unpaid meal periods when working a "day shift."

12.     While working as Special Officers for Defendant, Plaintiffs and all others similarly situated may be compensated for hours worked over 40 in a workweek *only if* the overtime hours were pre-approved by Defendant. However, even when Defendant compensates Plaintiffs and all others similarly situated for overtime hours that were pre-approved, Defendant systemically fails to pay Plaintiffs and all others similarly situated for this overtime work at the correct regular rate of pay.

13.     Defendant captures the work hours of Special Officers, including time spent working before their scheduled shift begins and/or after the end of their scheduled shifts, on the Defendant's electronic timekeeping system, "CityTime," which is maintained and accessible at Plaintiffs' work locations. However, CityTime automatically deducts one hour each day for Plaintiffs' uncompensated meal periods during the day shift regardless of whether the Plaintiffs work through all or part of their uncompensated meal period.

### *Defendant's Fair Labor Standards Act Violations Are Willful*

14.     CityTime tracks Plaintiffs' work time on a minute-by-minute basis. However, Defendant does not pay Special Officers on a minute-by-minute basis. This is because when the Defendant programmed and implemented CityTime, it chose to utilize a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-

punch" system (i.e., one that, by default, pays employees for all the time between punch in and punch out).

15.     Upon information and belief, Defendant failed to conduct an audit or otherwise investigate any of the work minutes captured by CityTime as "uncompensated" time, including but not limited to what Special Officers are doing during their recorded pre-shift, post-shift, and uncompensated meal period time.

16.     Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs. Plaintiffs' CityTime records and payroll data are not readily available to Plaintiffs and other Special Officers because they are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray, et al. v. City of New York*, No. 1:16-cv-08072-PKC, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

17.     Upon information and belief, Defendant failed to seek advice from the Department of Labor regarding whether its pay policies and practices comply with the FLSA.

18.     The Defendant is well aware of its obligation to pay employees for overtime work which is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by Plaintiffs' superiors. *See, e.g., Foster v. City of New York,* 2017 U.S. Dist. Lexis 227758 (S.D.N.Y. Sept. 30, 2017) (granting summary judgment for plaintiff New York City employees on FLSA claims that they worked uncompensated overtime about which their managers were aware, despite required use of the CityTime system); *De La Cruz v. City of New York,* 2017 U.S. Dist. Lexis 227758 (S.D.N.Y. Sept. 30, 2017) (same). In fact, the former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See*

*Perry v. City of New York,* Case No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70. However, at all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work which is performed with their supervisors' knowledge and recorded on the CityTime system or during the uncompensated auto-deducted meal period but for which no corresponding overtime request is submitted or because such time was not pre-approved.

### ***Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated***

19.     While working as Special Officers for DCAS, Plaintiffs routinely work over 40 hours a week. Plaintiffs are scheduled for five shifts of nine hours in length each week with one hour automatically deducted each shift as an uncompensated meal period ("day shift") or for five shifts of eight hours each week without a meal period ("night shift"). Plaintiffs who work the night shift are not permitted to leave their post and are not provided with a one-hour meal period. Thus, Plaintiffs and all others similarly situated are scheduled to perform a minimum of 40 hours of work per workweek.

20.     Plaintiffs frequently work overtime in addition to their regular 40 hours of work per week by performing their regular job duties for which they are not compensated. Specifically, they routinely work additional hours before the official start time of their regularly scheduled shifts, after the end of their regularly scheduled shifts, and during their unpaid meal periods on day shift, all without overtime compensation. This pre-shift, post-shift and meal period work causes Plaintiffs and all others similarly situated to work in excess of 40 hours in each week because they are scheduled to work 40 hours per workweek even without this additional overtime. As such, Plaintiffs and all others similarly situated regularly work additional uncompensated hours which are in excess of 40 in a workweek.

21.     Plaintiffs and all others similarly situated begin work before the official start time of their shifts and stop working after the end of their official shifts. Plaintiffs' pre-shift work includes, but is not limited to, the tasks listed in Paragraph 9, as well as work spent preparing for their shift by retrieving and preparing equipment – including handcuffs, radios, bullet proof vests, utility belts, OC spray (pepper spray), flashlights, medical kits, gloves, batons, firearm holsters, firearms, and ammunition – and updating their memo books before roll call.  Plaintiffs and all others similarly situated are required to perform this pre-shift work as the Defendant requires that they report to roll call, which starts at the beginning of their scheduled shift, with all issued weapons and other equipment. Plaintiffs' post-shift work includes, but is not limited to, the tasks listed in Paragraph 9, as well as monitoring that all visitors have vacated the assigned City buildings, completing all necessary reports related to calls for service, and returning their equipment and weapons to the assigned location. Plaintiffs and all others similarly situated have been instructed that they are not permitted to leave their assigned locations until all visitors have left the premises.

22.     Plaintiffs and all others similarly situated assigned to the day shift perform work during some or all of their one-hour unpaid meal periods performing their regular job duties (i.e., the tasks listed in Paragraph 9) and continuing to respond to incidents and emergencies occurring in City buildings and surrounding areas, including assisting sick, injured, or disorderly members of the public. Plaintiffs are not compensated for this work time that is performed during their meal periods.

23.     Defendant is aware that this pre-shift, post-shift, and meal period uncompensated work time occurs because, among other things, Defendant tracks Plaintiffs' worktime through CityTime, Plaintiffs' supervisors observe uncompensated work being performed and review

Plaintiffs' time records, and, as Defendant is aware, the nature of Plaintiffs' work requires them to work this additional time.

24.     Prior to approximately May 2021, Special Officers were compensated for approximately 30 minutes per day for performing pre-shift work, including preparing their equipment prior to the start of their regularly scheduled shift as described in Paragraph 21.

25.     In or around May 2021, Special Officers complained to the Deputy Director of Labor Relations at DCAS that they were not being properly compensated for their meal periods. After raising this complaint, rather than comply with the FLSA and provide proper compensation for meal period work, DCAS instead notified Special Officers that they would no longer be compensated for the 30 minutes pre-shift spent preparing their equipment. However, DCAS continues to require that the Special Officers be in full uniform, fully prepared to start work at the start of their shift (i.e., roll call). DCAS also notified Special Officers that they must punch in at the start of their lunch period and out at the end of their lunch period, which had not been previously required. Since this announcement in May 2021, Special Officers have not been compensated for the approximately 30 minutes of daily pre-shift work that they perform, even though their employer-mandated pre-shift duties and tasks have remained the same.

26.     In Paragraphs 27-30, Plaintiffs provide the following examples of unpaid pre-shift, post-shift, and meal period work performed by the Representative Plaintiffs (i.e., Plaintiffs Disla, Dusauzay, Capote, and Dickerson), as well as those similarly situated to them.

27.     Plaintiff Disla routinely works over 40 hours in a workweek. Plaintiff Disla is primarily assigned to the New York City Marriage Bureau located at 80 Centre Street in Manhattan, NY and reports to work at 1 Centre Street in Manhattan. When Plaintiff Disla works over 40 hours, Defendant fails to compensate him for all his work time, including but not limited

to time spent performing tasks enumerated in Paragraphs 9, 21 and 22 before the official start of his scheduled nine-hour shift, after the end of his nine-hour scheduled shift, and during his unpaid one-hour meal period. Specifically, Plaintiff Disla's regularly scheduled shift is 7:30 am to 4:30 pm, Monday to Friday. Plaintiff Disla routinely arrives approximately 15-30 minutes prior to the start of his scheduled shift and begins performing work tasks such as updating his memo book, preparing equipment, and retrieving his firearm from the armory. Plaintiff Disla also routinely works after the end of his scheduled shift for approximately 10-20 minutes, performing the duties described in Paragraphs 9 and 21, continuing to patrol the building until all visitors have left and returning his equipment to the assigned location. In addition, Plaintiff Disla regularly works through his meal period, performing the duties listed in Paragraphs 9 and 22 such as responding to incidents and emergencies, monitoring the building, and completing reports related to these responses. Thus, Plaintiff Disla is not compensated for at least approximately three and a half or more hours of additional overtime work beyond his scheduled shift per week.

28.     Plaintiff Dusauzay routinely works over 40 hours in a workweek. Plaintiff Dusauzay is currently primarily assigned to 2 Lafayette Street and 253 Broadway in Manhattan, and reports to work at 1 Centre Street in Manhattan. When Plaintiff Dusauzay works over 40 hours, Defendant fails to compensate him for all his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 9, 21, and 22 before the official start of his scheduled nine-hour shift, after the end of his nine-hour scheduled shift, and during his unpaid one-hour meal period on the day shift. Specifically, since approximately January 2021, Plaintiff Dusauzay's regularly scheduled shift is 7:30 am to 4:30 pm, Monday to Friday; from approximately July 2020 to January 2021, Plaintiff Dusauzay's regularly scheduled shift was 4:00 p.m. to 12:00 a.m., Monday to Friday; and from approximately 2018 until March 2020, his regularly scheduled shift

was 11:00 a.m. to 8:00 p.m. with a one-hour uncompensated meal period, Monday to Friday. Plaintiff Dusauzay routinely arrives approximately 30 minutes prior to the start of his scheduled shift and begins performing work tasks including speaking to supervisors about work tasks, updating his memo book, preparing equipment, retrieving his firearm from the armory, and responding to incidents involving members of the public on City property.  Plaintiff Dusauzay also regularly works after the end of his scheduled shift for approximately 15-30 minutes, performing the duties described in Paragraphs 9 and 21, responding to and escorting disorderly persons out of the building, continuing to patrol the building until all visitors have left, and completing reports related to incidents. In addition, Plaintiff Dusauzay has regularly worked through his meal period, performing the duties listed in Paragraphs 9 and 22 such as responding to incidents and emergencies, and responding to requests for incident-related information from his supervisors on his DCAS-issued cell phone or radio. Thus, Plaintiff Dusauzay is not compensated for at least approximately three and a half or more hours of additional overtime work beyond his scheduled shift per week.

29.    Plaintiff Capote routinely works over 40 hours in a workweek. Plaintiff Capote is currently assigned to DCAS buildings throughout Manhattan and reports to work at 1 Centre Street in Manhattan. When Plaintiff Capote works over 40 hours, Defendant fails to compensate him for all his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 9, 21, and 22 before the official start of his scheduled nine-hour shift, after the end of his nine-hour scheduled shift, and during his unpaid one-hour meal period. Specifically, Plaintiff Capote's regularly scheduled shift is 7:30 am to 4:30 pm, Monday to Friday. Plaintiff Capote routinely begins performing work tasks approximately 30 minutes prior to the start of his scheduled shift such as updating his memo book, preparing equipment, and retrieving his firearm

from the armory.  Plaintiff Capote has regularly worked after the end of his scheduled shift for approximately 15 minutes, performing the duties described in Paragraphs 9 and 21, continuing to patrol the building until any events have ended and all visitors have left, and/or the vehicle entrance gate at 1 Centre Street has closed. In addition, Plaintiff Capote regularly works through his meal period, performing the duties listed in Paragraphs 9 and 22 such as opening the Manhattan court building after recess, screening visitors, and responding to incidents. Thus, Plaintiff Capote is not compensated for at least approximately three and a half or more hours of additional overtime work beyond his scheduled shift per week.

30.     Plaintiff Dickerson routinely works over 40 hours in a workweek. Plaintiff Dickerson is currently assigned to Queensboro Hall located at 120-55 Queens Blvd. in Queens, NY, the Queens Computer-based Testing and Application Center (CTAC) located at 118-35 Queens Blvd., and any DCAS facilities in Queens, and reports to work at Queensboro Hall. When Plaintiff Dickerson works over 40 hours, Defendant fails to compensate him for all his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 9 and 21 before the official start of his scheduled nine-hour shift and after the end of his nine-hour scheduled shift. Specifically, Plaintiff Dickerson's current regularly scheduled shift is 7:30 am to 4:30 pm, Monday to Friday. Plaintiff Dickerson routinely begins performing work tasks approximately 30 minutes prior to the start of his scheduled shift, such as updating his memo book, preparing equipment, and retrieving his firearm from the armory in which it is stored. Plaintiff Dickerson has regularly worked after the end of his scheduled shift for approximately 15-30 minutes, performing the duties described in Paragraphs 9 and 21, including but not limited to continuing to patrol the building until all visitors have left and returning his equipment to the assigned location. Thus, Plaintiff

Dickerson is not compensated for at least approximately two hours and thirty minutes or more of additional overtime work beyond his scheduled shift per week.

31.     All Special Officers employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendant fails to compensate Special Officers for pre-shift, post-shift, and meal period work that was not pre-approved in advance. The amount of pre-shift and post-shift overtime work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other work and pay records, which are in the Defendant's exclusive custody and control.

### *The Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

32.     While working as Special Officers during the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to night shift differentials. These payments are made pursuant to Agency-wide policy and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all others similarly situated. However, Defendant fails to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiffs.

33.     Defendant fails to include these payments in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice.

34.     For example, during the past three years, Plaintiff Dickerson has earned a night shift differential while working as a Special Officer during weeks in which he also earned overtime compensation. Plaintiff Dickerson regularly earned a night shift differential while working shifts which covered time between 6:00 p.m. and 8:00 a.m. However, on those occasions, including, for example, the weeks of May 24, 2020 to June 6, 2020 and September 13, 2020 to September 26,

2020, Defendant failed to include the night shift differential in the calculation of his overtime rate during those workweeks.

35.     Similarly, during the past three years, Representative Plaintiffs Disla, Dusauzay and Capote earned night shift differential while working as Special Officers during weeks in which they also earned overtime compensation. However, Defendant failed to include the night shift differential in the regular rate of pay upon which their overtime rates were based during those weeks in which they also earned overtime compensation.

36.     All Special Officers employed by Defendant who receive these payments, including night shift differential payments, pursuant to Agency-wide policy and/or a collective bargaining agreement are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendant continues to fail to include these payments in the regular rate of pay upon which their overtime rate is based. The precise amount of improperly paid overtime received by each Plaintiff, as well as the specific dates on which such differentials were not paid by the Defendant, can be identified through the Defendant's timekeeping system and through other work and pay records, which are in the Defendant's exclusive custody and control.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

37.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 36 in their entirety and restate them herein.

38.     At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed

work activities, including but not limited to when they are performing tasks enumerated in Paragraphs 9 and 21, without compensation before the start of their shifts and after the end of their scheduled shifts, much of which is recorded on Defendant's timekeeping system. Plaintiffs and all others similarly situated also have performed work without compensation during their unpaid meal periods. This pre-shift, post-shift, and meal work has caused Plaintiffs and all others similarly situated to work in excess of 40 hours in a given week without proper overtime compensation. Accordingly, because of these pay practices, Defendant has failed to provide Plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

39.    Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts, after the end of their scheduled shifts, and during their uncompensated meal periods.

40.    As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendant and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty

imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

41.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

42.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA

43.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 42 in their entirety and restate them herein.

44.     Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments such as night shift differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and of all others similarly situated, resulting in Defendant paying Plaintiffs and all others similarly situated for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include night differential pay in Plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

45.     As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly

situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

46.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

47.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(a)  Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b)  Award Plaintiffs and those similarly situated monetary liquidated damages equal to their unpaid compensation;

(c)  Award Plaintiffs and those similarly situated interest on their unpaid compensation;

(d)  Award Plaintiffs and those similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e)  Grant such other relief as may be just and proper.

DATE: August 5, 2022      Respectfully submitted,

         */s/ Hope Pordy*
         Hope Pordy
         Elizabeth Sprotzer
         SPIVAK LIPTON, LLP
         1040 Avenue of the Americas, 20th Floor
         New York, NY  10018
         Phone: (212) 765-2100
         hpordy@spivaklipton.com
         esprotzer@spivaklipton.com

         */s/ Gregory K. McGillivary*
         Gregory K. McGillivary
         Sara L. Faulman
         Sarah M. Block
         McGILLIVARY STEELE ELKIN LLP
         1101 Vermont Ave., N.W., Suite 1000
         Washington, DC  20005
         Phone: (202) 833-8855
         gkm@mselaborlaw.com
         slf@mselaborlaw.com
         smb@mselaborlaw.com

         *Counsel for Plaintiffs*