**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DELVY DISLA, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No.  22-CV-06693 |
| v. | ) |
| | ) |
| CITY OF NEW YORK, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and among the Plaintiffs in the above-captioned case, who are identified in Exhibit A attached hereto, and who are all persons who have timely consented to be party-plaintiffs, and Defendant, the City of New York and all other New York City departments, commissions, agencies, related entities, predecessors, successors, trustees, members, officers, directors and employees, agents, assigns, representatives, employee benefit plans and the trustees, administrators, and fiduciaries of such plans (hereinafter collectively referred to as "Defendant"), and is based on the following:

## I.    RECITALS

1.1    Plaintiffs are 63 individuals employed or formerly employed by the Defendant as Special Officers in the Department of Citywide Administrative Services (DCAS). On August 5, 2022, August 16, 2022, September 28, 2022, October 19, 2022, October 28, 2022, November 18, 2022, and March 9, 2023, Plaintiffs filed their Consent to Sue forms with this Court in the case of *Delvy Disla, et al., v. City of New York*, Case No. 22-CV-06693 (hereinafter, the "Lawsuit"). Exhibit A contains a list of all Plaintiffs and the dates on which they filed their Consent to Sue forms with this Court.

1.2    Plaintiffs listed in Exhibit A have made certain allegations concerning their employment with the Defendant regarding an asserted failure to pay wages and overtime compensation in compliance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (hereinafter referred to as the "Released Claims").

1.3    Plaintiffs and Defendant (hereinafter collectively referred to as the "Parties") have agreed to settle the matters in dispute between and among them pursuant to the terms of this Agreement. Specifically, the Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement, and dismissal of the Plaintiffs' claims with prejudice. The Parties have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests.

1.4    The Parties, through their counsel, hereby seek judicial approval of this Settlement Agreement. In the event the proposed settlement contained in this Agreement does not become effective in accordance with the terms hereof, is not finally approved, is terminated, cancelled or otherwise fails to become effective for any reason, this Agreement will no longer have any effect, and the Parties will revert to their respective positions as of the date and time immediately prior to the execution of this Agreement.

## II.    PAYMENT AND DISTRIBUTION

2.1    In consideration for the terms, conditions and promises in this Agreement, Defendant shall, in accordance with the paragraphs in this section, pay or will cause to be paid to Plaintiffs **$811,500.00** to resolve all claims for FLSA damages allegedly accruing for the period from August 5, 2019, through April 20, 2023 ("the Settlement Amount"), inclusive of backpay, liquidated damages, attorneys' fees and litigation expenses. The Settlement Amount will be divided and distributed to Plaintiffs as follows:

(A) a set of payroll checks and/or stubs for direct deposit payments, regular payroll checks for active (employed) Plaintiffs, and separate payroll checks for inactive (no longer employed) Plaintiffs made payable to each Plaintiff in accordance with Plaintiffs' Counsel's instructions constituting his or her share of the backpay award in the total amount of **$326,000.00** ("the Backpay Amount"), less all applicable deductions and withholdings for that individual Plaintiff; and

(B) one check in the amount of **$485,500.00** constituting liquidated damages, service awards, attorneys' fees and litigation expenses ("Lump Sum Amount") payable to Plaintiffs' Counsel McGillivary Steele Elkin LLP for distribution as follows:

(i) $204,846.95 of the Lump Sum Amount will be distributed to the Plaintiffs in accordance with Exhibit A as liquidated damages and $3,000 as Service Awards distributed to the three Plaintiffs who served the collective through their participation as Settlement Team Members in the amount of $1,000 each; and

(ii) $266,923.47 of the Lump Sum Account will be distributed to Plaintiffs' Counsel as attorneys' fees and $10,729.58 as litigation expenses in accordance with paragraph 2.4 below and pursuant to the individual retainer agreements signed by all 63 Plaintiffs.

The individual amounts of backpay and liquidated damages are to be calculated pursuant to the formula set forth in paragraph 2.5. Each individual Plaintiff's settlement payment amounts are set forth in Exhibit A. These amounts are agreed to among the Parties to compromise, settle and satisfy the Released Claims and liquidated damages related to the Released Claims.

2.2     Within fourteen (14) days of the date that the Court enters an Order finally approving this Agreement, Plaintiffs shall tender, by overnight mail, e-mail attachment or hand

delivery, to Defendant's Counsel, the following document to effectuate payment of the settlement amounts referenced in paragraph 2.1: a listing of the distribution amounts to each individual Plaintiff along with each Plaintiff's social security number and most up-to-date address. Defendant shall issue payment by distributing the backpay amounts (not liquidated damages) in regular payroll checks or direct deposit payments directly to active Plaintiffs and distributing separate payroll checks for inactive Plaintiffs to Plaintiffs' Counsel in the amounts as specified in paragraph 2.1 for backpay, and by providing by check to Plaintiffs' law firm, McGillivary Steele Elkin LLP, the Lump Sum Amount for all of the Plaintiffs as specified in paragraph 2.1(B). In the event that a Plaintiff's backpay amount or liquidated damages amount will be reduced as the result of wage garnishment, lien or judgment (to the extent set forth in paragraph 2.1), Defendant's Counsel shall make a good faith effort to provide Plaintiffs' Counsel with: (1) the name of the Plaintiff; and (2) the amount of the reduction and the nature of the reduction at or before the time the payment is made by Defendant. The Settlement Amount will be paid within ninety (90) days of the date that the Court enters an Order finally approving this Agreement.

2.3    Defendant will forward the Lump Sum Amount payable to McGillivary Steele Elkin LLP as Plaintiffs' Counsel, who will be responsible for distributing to each Plaintiff listed in Exhibit A his or her respective share of the Lump Sum Amount in accordance with the formula described in paragraph 2.5 below and pursuant to the individual Plaintiffs' retainer agreements with Plaintiffs' Counsel. Defendant will make a good faith effort to notify Plaintiffs' Counsel at least fourteen (14) calendar days prior to distribution of the backpay amount of the exact date when each active (employed) Plaintiff will be paid. Defendant will also send to Plaintiffs' Counsel each inactive (non-employed) Plaintiff's individual backpay check for

distribution to these Plaintiffs along with a corresponding document identifying all deductions and withholdings. Defendant will work with Plaintiffs' Counsel to reissue backpay checks to any separated Plaintiffs whose checks become lost in the mail and/or become void. Plaintiffs' Counsel's good faith efforts to send backpay checks to the best address for inactive Plaintiffs will include running the Plaintiffs' addresses through the National Change of Address database to ensure Plaintiffs' Counsel has the best address on file for inactive Plaintiffs, and holding the City-issued backpay check until the liquidated damages check mailed by Plaintiffs' Counsel clears the inactive Plaintiff's account signifying that the liquidated damages check was delivered to the correct address.

2.4    Plaintiffs have entered into individual agreements with Plaintiffs' Counsel. Each of these retainer agreements provides for a contingency attorney fee equal to thirty-three and one third percent (33.33%) of the Settlement Amount, after deducting litigation expenses, which are in the amount of $10,729.58. Plaintiffs and their counsel are solely responsible for determining the contingency attorney fee applicable to this Agreement. Plaintiffs' Counsel shall deduct their contingency attorney fee in the amount of $266,923.47 from the Lump Sum Amount in accordance with those individual agreements.

2.5    For purposes of computing damages, "the relevant recovery period" used to calculate each individual Plaintiff's point total is three (3) years prior to the date when each Plaintiff's Consent to Sue form was filed with the Court, or the date that a Plaintiff became a Special Officer, whichever is later, and up to April 20, 2023, or the date that the Plaintiff was no longer employed as a Special Officer, whichever is earlier. Each Plaintiff received one point for each week during "the relevant recovery period" that the Plaintiff was employed by the Defendant as a Special Officer at DCAS. The total number of points for all Plaintiffs was then divided into

**$530,849.95,** which reflects the Net Settlement Fund after Service Awards, attorneys' fees and litigation expenses are deducted. Plaintiffs and their counsel are solely responsible for determining the allocations among Plaintiffs and the distribution of funds, except that Defendant will make reasonable efforts to assist Plaintiffs' Counsel in reissuing backpay checks as needed as described in paragraph 2.3.

2.6    Plaintiffs and their counsel, McGillivary Steele Elkin LLP and Spivak Lipton LLP, will defend, release, and hold Defendant harmless from any and all claims or causes of action arising from the distribution of settlement funds.

2.7    Defendant shall distribute W-2 forms to the Plaintiffs reflecting the backpay payments made under paragraphs 2.1 and 2.2 in this Agreement. Plaintiffs' Counsel shall distribute to each Plaintiff receiving a liquidated damages award a Miscellaneous Income Form 1099 reflecting the amount paid to the Plaintiff as liquidated damages and Service Awards (where applicable) inclusive of the contingency attorneys' fees paid. Each Plaintiff agrees that he or she will be responsible for his or her individual tax liability associated with the payments made to him or her under this Agreement. Plaintiffs and Plaintiffs' Counsel agree that they shall indemnify and hold harmless Defendant in the event of any dispute concerning whether taxes are owed by any Plaintiff on the liquidated damages paid as part of the settlement.

2.8    All payments to Plaintiffs shall be deemed to be paid solely in the year in which such payments are actually received by Plaintiffs. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Plaintiff to additional compensation or benefits under any bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Agreement, nor will it entitle any Plaintiff to any increased retirement or matching benefits, or deferred compensation benefits. It is also expressly understood

6

and agreed that no pension contributions shall be taken from the backpay payments. It is the intent of this Agreement that the settlement payments provided for in this Agreement are the sole payments to be made to the Plaintiffs, and that the Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received payment pursuant to this Agreement (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the time period beginning three (3) years prior to the filing date of each Plaintiff's Consent to Sue form through April 20, 2023). Plaintiffs specifically waive entitlement to such benefits and in additional consideration for the mutual covenants made in this Agreement, hereby agree not to bring any further action against Defendant or any retirement or welfare benefit plan maintained by Defendant or any of its affiliates for additional benefits as a result of any additional compensation paid as a result of this Agreement. This Agreement may be used by the Defendant or by any benefit plan or fiduciary thereof as a complete and absolute defense to any such claim.

## III.  RELEASE AND COVENANT NOT TO SUE

3.1    All Plaintiffs for themselves, and their spouses and families, attorneys (if any), agents, executors, administrators, personal representatives, heirs, successors, any future estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasers"), voluntarily and with the advice of counsel, fully and forever release, acquit, and discharge the Defendant, its present or former officers, directors, subsidiaries, affiliates, partners, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from all wage and hour claims asserted in the Lawsuit, and all federal, state and/or local statutory

wage and hour claims that could have been asserted in the Lawsuit, arising for the time period beginning three (3) years prior to the filing date of each Plaintiff's Consent to Sue form through April 20, 2023, for the time period Plaintiffs were employed as a Special Officer for the Defendant at DCAS.

3.2    All Plaintiffs shall be deemed to and shall have waived, released, discharged and dismissed all released claims as set forth in paragraph 3.1, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved or with regard to any facts which are now unknown to them.

3.3    All Plaintiffs understand and agree that to the fullest extent permitted by law, they are precluded from filing or pursuing any legal claim or action of any kind against any entity at any time in the future, or with any federal, state or municipal court, tribunal or other authority arising out of the Released Claims for the time period beginning three (3) years prior to the filing date of each Plaintiff's Consent to Sue form through April 20, 2023, with respect to the claims asserted in this Lawsuit. Excluded from this release and covenant not to sue is any right or claim that cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by government agencies. All Plaintiffs are waiving, however, any right to monetary recovery should any government agency pursue any claims on their behalf with respect to the Released Claims for the time period beginning three (3) years prior to the filing date of each Plaintiff's Consent to Sue form through April 20, 2023.

3.4    All Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Each Plaintiff affirms that he or she has not been coerced, threatened, or intimidated into agreeing to the terms of this Agreement, and he or she has been advised to consult with their attorney should they have any questions.

## IV.    DISMISSAL OF CLAIMS

4.1    Plaintiffs agree to dismissal of all claims asserted in the Lawsuit against Defendant as specified in paragraph 1.1 and 1.2 with prejudice.

## V.    NO ADMISSION OF LIABILITY

5.1    Nothing contained herein shall be deemed to be an admission by the City of New York, or any of the present or former officials, employees, representatives and agents of the Defendant of the truth of any of the allegations contained in the Complaint, or an admission that Defendant or any of the present or former officials, employees, representatives and agents of Defendant have in any manner or way violated Plaintiffs' rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York or the City of New York, or any other rules, regulations or bylaws of the Defendant. This Agreement shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except that this Agreement may be used by either party in connection with any subsequent action or proceeding relating solely to the enforcement of this Agreement.

## VI.    NO RETALIATION

6.1    Defendant agrees not to retaliate against nor take any action against any Plaintiff employed by Defendant for pursuing claims in this action or for otherwise participating in the Lawsuit.

## VII.    CONTINUED JURISDICTION

7.1    The U.S. District Court for the Southern District of New York shall have continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement, and to hear and adjudicate any dispute or litigation arising from this Agreement or the issues of law and facts asserted in or related to the instant action.

## VIII.   PARTIES' AUTHORITY

8.1     The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof. The Parties acknowledge that the Court may schedule a settlement approval conference in this matter. To object to the settlement, a Plaintiff must either appear in person at the settlement approval conference, or by telephone if the Court conducts a telephonic settlement approval conference, to voice their objection. To be heard at such conference, a Plaintiff must contact the Court, in writing, in advance of any such settlement approval conference to explain all reasons for the objection. A Plaintiff who does not object to the Settlement Agreement does not have to attend the settlement approval conference should the Court schedule one or take any other action to approve the settlement and/or otherwise indicate his or her agreement to the terms of the settlement.

8.2     All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

## IX.   MUTUAL FULL COOPERATION

9.1     The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

## X.    <u>ENFORCEMENT ACTIONS</u>

10.1    In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other Party or Parties to enforce the provisions of this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

## XI.    <u>MODIFICATION</u>

11.1    This Agreement and its attachment may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

## XII.    <u>ENTIRE AGREEMENT</u>

12.1    This Agreement and its attachment constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other settlement-related document, the Parties intend that this Agreement shall be controlling.

## XIII.    <u>CHOICE OF LAW/JURISDICTION</u>

13.1    This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, both in its procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the U.S. District Court for the Southern District of New York. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

## XIV.  **VOIDING THE AGREEMENT**

14.1    In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.


[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the

date indicated below:

Stephen Suhovsky
The City of New York Law Department
100 Church St.
New York, NY 10007

Dated: May 18 , 2023

*Attorneys for Defendant*

Gregory K. McGillivary
Sara Faulman
Sarah M. Block
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005

Dated: May 19, 2023

Hope Pordy
Eliza Schultz
SPIVAK LIPTON LLP
1040 Avenue of the Americas, 20th Floor
New York, NY 10018

Dated: May 19 , 2023

*Attorneys for Plaintiffs*

13

EXHIBIT A

DISLA, et al., v CITY OF NY

| # | First Name | Last Name | FIRST NAME FROM CITY | LAST NAME FROM CITY | GROSS BACKPAY AMOUNTS | LIQUIDATED DAMAGES AMOUNTS | SERVICE AWARDS | GROSS BACKPAY PLUS LIQUIDATED DAMAGES AMOUNT PLUS SERVICE AWARDS |
|---|---|---|---|---|---|---|---|---|
| 1 | Dalisha | Adams | DALISHA | ADAMS | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |
| 2 | Olumide | Adeyanju | OLUMIDE | ADEYANJU | $ 5,919.63 | $ 3,719.68 | | $ 9,639.31 |
| 3 | Vannessa | Agosto | VANNESSA | AGOSTO | $ 5,369.72 | $ 3,374.14 | | $ 8,743.86 |
| 4 | Sohel | Ahmed Jr | SOHEL | AHMED JR | $ 5,725.54 | $ 3,597.73 | | $ 9,323.27 |
| 5 | Lindell | Blai | LINDELL | BLAI | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 6 | Yevgeniy | Bogat | YEVGENIY | BOGAT | $ 5,725.54 | $ 3,597.73 | | $ 9,323.27 |
| 7 | John | Brake Jr | JOHN | BRAKE JR | $ 5,402.06 | $ 3,394.47 | | $ 8,796.53 |
| 8 | Kayan | Brown | KAYAN | BROWN | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 9 | Rayneisha | Brownlee | RAYNEISHA | BROWNLEE | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 10 | Paul | Cadet | PAUL | CADET | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 11 | William | Caldwell | WILLIAM | CALDWELL | $ 2,523.12 | $ 1,585.44 | | $ 4,108.56 |
| 12 | Justin | Capote | JUSTIN | CAPOTE | $ 5,725.54 | $ 3,597.73 | $ 1,000.00 | $ 10,323.27 |
| 13 | Chuck | Davis | CHUCK | DAVIS | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 14 | Nakemia | Davis | NAKEMIA | DAVIS | $ 5,725.54 | $ 3,597.73 | | $ 9,323.27 |
| 15 | Jermaine | Dickerson | JERMAINE | DICKERSON | $ 5,757.89 | $ 3,618.06 | $ 1,000.00 | $ 10,375.95 |
| 16 | Delvy | Disla | DELVY | DISLA | $ 5,078.59 | $ 3,191.21 | | $ 8,269.80 |
| 17 | Ronnell | Dusauzay | RONNELL | DUSAUZAY | $ 6,243.10 | $ 3,922.94 | | $ 10,166.04 |
| 18 | Lidia | Galazka | LIDIA | GALAZKA-ALI | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 19 | Sterling | Gates | STERLING | GATES | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |
| 20 | Stephen | Gurzenda | STEPHEN | GURZENDA | $ 4,302.24 | $ 2,703.37 | | $ 7,005.61 |
| 21 | Jason | Harris | JASON | HARRIS | $ 4,916.85 | $ 3,089.57 | | $ 8,006.42 |
| 22 | Nikeda | Harry | NIKEDA | HARRY | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |
| 23 | Ricardo | Henry | RICARDO | HENRY | $ 5,272.67 | $ 3,313.16 | | $ 8,585.83 |
| 24 | Musammat | Islam | MUSAMMAT | ISLAM | $ 4,722.76 | $ 2,967.62 | | $ 7,690.38 |
| 25 | Cheryla | Jackson | CHERYLA | JACKSON | $ 4,302.24 | $ 2,703.37 | | $ 7,005.61 |
| 26 | Eric | Johnson | ERIC | JOHNSON | $ 3,752.33 | $ 2,357.84 | | $ 6,110.17 |
| 27 | Naquaya | Jones | NAQUAYA | JONES | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |

EXHIBIT A

DISLA, et al., v CITY OF NY

| # | First Name | Last Name | FIRST NAME FROM CITY | LAST NAME FROM CITY | GROSS BACKPAY AMOUNTS | LIQUIDATED DAMAGES AMOUNTS | SERVICE AWARDS | GROSS BACKPAY PLUS LIQUIDATED DAMAGES AMOUNT PLUS SERVICE AWARDS |
|---|---|---|---|---|---|---|---|---|
| 28 | Jaspreet | Kaur | JASPREET | KAUR | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |
| 29 | Arun | Kumar | ARUN | KUMAR | $ 3,461.20 | $ 2,174.90 | | $ 5,636.10 |
| 30 | April | Lee | APRIL | LEE | $ 2,361.38 | $ 1,483.81 | | $ 3,845.19 |
| 31 | Charles | Licata | CHARLES | LICATA | $ 5,563.80 | $ 3,496.10 | | $ 9,059.90 |
| 32 | Tiffany | Marin | TIFFANY | MARIN | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |
| 33 | Pedro | Martinez | PEDRO | MARTINEZ | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 34 | Robert | Matos | ROBERT | MATOS | $ 6,016.67 | $ 3,780.66 | | $ 9,797.33 |
| 35 | Fantasia | Mealing | FANTASIA | MEALING | $ 5,725.54 | $ 3,597.73 | | $ 9,323.27 |
| 36 | Mabel | Mejia | MABEL | MEJIA | $ 4,431.63 | $ 2,784.68 | | $ 7,216.31 |
| 37 | Niasha | Merced | NIASHA | MERCED | $ 5,434.41 | $ 3,414.80 | | $ 8,849.21 |
| 38 | Bryan | Mulholland | BRYAN | MULHOLLAND | $ 4,108.16 | $ 2,581.43 | $ 1,000.00 | $ 7,689.59 |
| 39 | Charelle | Ollivierre | CHARELLE | OLLIVIERRE | $ 5,854.93 | $ 3,679.04 | | $ 9,533.97 |
| 40 | Cherryann | Ollivierre-Hector | CHERRYANN | OLLIVIERRE-HECT | $ 226.43 | $ 142.28 | | $ 368.71 |
| 41 | Joyce | Ossou | JOYCE | OSSOU | $ 5,272.67 | $ 3,313.16 | | $ 8,585.83 |
| 42 | Lamont | Parker | LAMONT | PARKER | $ 5,919.63 | $ 3,719.68 | | $ 9,639.31 |
| 43 | Patience | Rhodes | PATIENCE | RHODES | $ 4,399.29 | $ 2,764.35 | | $ 7,163.64 |
| 44 | Kenroy | Robin | KENROY | ROBIN | $ 5,563.80 | $ 3,496.10 | | $ 9,059.90 |
| 45 | Miguel | Rodriguez Jr | MIGUEL | RODRIGUEZ JR | $ 5,660.85 | $ 3,557.08 | | $ 9,217.93 |
| 46 | Liakot | Sharif | LIAKOT | SHARIF | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |
| 47 | Crystal | Sinclair | CRYSTAL | SINCLAIR | $ 4,399.29 | $ 2,764.35 | | $ 7,163.64 |
| 48 | Sivad | Slocumb-Warlick | SIVAD | SLOCUMB-WARLICK | $ 5,919.63 | $ 3,719.68 | | $ 9,639.31 |
| 49 | Ramon | Soto | RAMON | SOTO | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 50 | Kareem | Sylvestre | KAREEM | SYLVESTRE | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 51 | William | Tarrant | WILLIAM | TARRANT | $ 4,431.63 | $ 2,784.68 | | $ 7,216.31 |
| 52 | Walker | Thomas | WALKER | THOMAS | $ 5,757.89 | $ 3,618.06 | | $ 9,375.95 |
| 53 | Richard | Tom | RICHARD | TOM | $ 4,302.24 | $ 2,703.37 | | $ 7,005.61 |
| 54 | Arnold | Torres | ARNOLD | TORRES | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |

EXHIBIT A

DISLA, et al., v CITY OF NY

| # | First Name | Last Name | FIRST NAME FROM CITY | LAST NAME FROM CITY | GROSS BACKPAY AMOUNTS | LIQUIDATED DAMAGES AMOUNTS | SERVICE AWARDS | GROSS BACKPAY PLUS LIQUIDATED DAMAGES AMOUNT PLUS SERVICE AWARDS |
|---|---|---|---|---|---|---|---|---|
| 55 | Tony | Tucker | TONY | TUCKER | $ 4,949.20 | $ 3,109.90 | | $ 8,059.10 |
| 56 | Peter | Valcourt | PETER | VALCOURT | $ 2,037.90 | $ 1,280.55 | | $ 3,318.45 |
| 57 | Shane | Veira | SHANE | VEIRA | $ 6,210.76 | $ 3,902.62 | | $ 10,113.38 |
| 58 | Almarie | Vitale | ALMARIE | VITALE | $ 4,852.15 | $ 3,048.92 | | $ 7,901.07 |
| 59 | Kelly | Walsh | KELLY | WALSH | $ 4,431.63 | $ 2,784.68 | | $ 7,216.31 |
| 60 | Amillia | Williams | AMILLIA | WILLIAMS | $ 3,364.15 | $ 2,113.92 | | $ 5,478.07 |
| 61 | Lance | Williams | LANCE | WILLIAMS | $ 6,210.75 | $ 3,902.62 | | $ 10,113.37 |
| 62 | Javonie | Willis | JAVONIE | WILLIS | $ 4,528.67 | $ 2,845.66 | | $ 7,374.33 |
| 63 | Dennis | Yanza | DENNIS | YANZA | $ 5,725.53 | $ 3,597.73 | | $ 9,323.26 |
| | | | | | | | | |
| | | | | | $ 326,000.00 | $ 204,846.95 | $ 3,000.00 | $ 533,846.95 |